ARTHUR L. WAMPLER, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Wampler v. Commissioner
Docket No. 34395-87.
United States Tax Court
T.C. Memo 1988-551; 1988 Tax Ct. Memo LEXIS 580; 56 T.C.M. (CCH) 769; T.C.M. (RIA) 88551; December 5, 1988. Arthur L. Wampler, pro se. J. Frank Hall, Jr., for the respondent. SWIFT
MEMORANDUM *581 FINDINGS OF FACT AND OPINION SWIFT, Judge: Respondent determined deficiencies in petitioner's Federal income tax liabilities and additions to tax for 1981 through 1984 as follows: [1] Additions to Tax Under I.R.C. Section Year
Deficiency
6651(a)(1)
6653(a)(1)
6653(a)(2)
6654
1981
$ 1,934
$ 483.50  $ 96.70 *
$ 148.17
1982
6,763  1,690.75
338.15
*
658.44
1983
5,201  1,300.25
260.05
*
318.61
1984
3,573  893.25
178.65
*
224.95
This case was tried on October 20, 1988, in Little Rock, Arkansas. After settlement of some issues, the primary issue remaining for decision is whether amounts deposited into petitioner's bank account constituted taxable income without reduction or offset for additional business expenses. FINDINGS OF FACT Petitioner resided in Pine Bluff, Arkansas at the time the petition was filed. In 1980 and early 1981, *582 petitioner was unemployed. In 1981, petitioner's brother and nephew purchased through Moro Bay Oil Co., a closely held corporation in which they each owned 50 percent of the stock, oil development and production rights (the "lease rights") on property located in southern Arkansas. The property was located on a dry river bottom. The lease rights included the right to use the five oil wells and pumping equipment already located on the property. A sixth oil well was drilled on the property and paid for with funds provided by petitioner's brother and nephew. In 1981 through 1984, petitioner's brother and nephew hired petitioner to maintain and supervise repairs on the oil pumping equipment, to monitor operation of the equipment, and to assist in all aspects of running the oil production activity. In return for his services, petitioner allegedly was to receive a one-quarter interest in the profits realized from the oil leases. Petitioner also was to be reimbursed by his brother and nephew or by Moro Bay Oil Company for all expenses he incurred in maintaining and repairing the equipment. Because petitioner's home in Pine Bluff, Arkansas, was approximately 90 miles from the oil *583 wells, petitioner would sleep most nights of each week in a small work trailer on the river-bed property on which the wells were located. The trailer in which petitioner slept was used as a tool shed. Petitioner added a cot for sleeping and a hot plate to the other sparse furnishings in the trailer. Petitioner's wife stayed at the family home in Pine Bluff, and petitioner usually would return to Pine Bluff two or three times each week. Petitioner generally checked each well twice a day. He measured the oil level in the storage tanks and opened and shut valves when necessary to direct the oil pumped out of the ground into empty storage tanks. Petitioner supervised delivery of the oil through pipelines on the property into oil transportation pipelines or into trucks for delivery to refineries. In addition, petitioner supervised all repairs to the pumping equipment, storage tanks, and pipes. When assistance was needed, petitioner hired local farmers to assist in making repairs. Petitioner also hired plumbers and well drillers and supervised their work. The oil pumping equipment on the property was old. Pipes were constantly leaking. Pumps and rods often malfunctioned. Petitioner *584 paid for the parts and labor needed to repair the equipment. Petitioner generally paid for the parts and labor in cash obtained from his checking account in El Dorado, Arkansas. When checks were used to pay repair expenses, petitioner wrote the checks on his checking account at the bank in El Dorado. In order to have funds in his checking account to cover expenses relating to the oil leases or to obtain reimbursement for such expenses already paid, petitioner periodically called his nephew and requested that his nephew send funds to petitioner's account at the bank in El Dorado. For the most part, funds were transferred into petitioner's checking account by petitioner's nephew from the business checking account of Moro Bay Oil Co. Some of the funds transferred into petitioner's checking account allegedly represented loans to petitioner by his nephew. Some of the funds in the checking account were used to pay personal expenditures of petitioner and his wife (e.g., to cover a number of the monthly mortgage payments on petitioner's home in Pine Bluff). Funds transferred into petitioner's checking account in El Dorado during the years 1981 through 1984 were as follows: Year
Amount
1981
$ 18,340
1982
23,300
1983
21,937
1984
15,900
*585 Neither petitioner, his nephew, nor Moro Bay Oil Co. maintained books and records adequately to establish the specific purpose or use of the funds transferred into petitioner's checking account. Petitioner did not file a tax return for any of the years 1981 through 1984. In his notice of deficiency, respondent determined that the total funds deposited each year into petitioner's checking account represented taxable income to petitioner from the oil leases. Respondent also determined that petitioner was self employed with respect to his work relating to the oil leases and that the taxable income earned from that work should be subject to self-employment tax. Respondent also imposed additions to tax relating to petitioner's failure to pay estimated taxes and to petitioner's failure to file tax returns. Based upon settlement negotiations, respondent has treated the following portion of the funds deposited into petitioner's bank account as offset by deductible business expenses: Year
Business Expenses
1981
$ 8,733.32
1982
1,079.75  1983
2,200.00  1984
1,000.00  OPINION Petitioner claims that the funds deposited into his checking account were *586 not income, that they represented either advances or reimbursements of business expenses or loans, that no profits were realized from the oil leases, and that he owed no income tax during these years. Thus, petitioner argues that neither he, his brother, his nephew, nor Moro Bay Oil Co. made any profits from the oil leases. He also argues that during the years in issue, his tax home remained in Pine Bluff, Arkansas, and that many of the expenses he incurred while working on the oil wells and equipment (including personal meal expenses) constituted deductible business-related away-from-home travel expenses. Petitioner also contends that he incurred business expenses not related to away-from-home travel. Respondent contends that the deposits into petitioner's bank account should be regarded as taxable income to petitioner, that petitioner's tax home was at the location of his employment, and that petitioner should not be regarded as having incurred deductible away-from-home travel expenses while working at the location of the oil wells. Respondent concedes that petitioner incurred deductible business expenses which were paid out of funds deposited into petitioner's checking account, *587 but respondent contends that other than the deductions respondent has allowed by way of a partial settlement, no further business expense deductions should be allowed. Funds transferred into a taxpayer's bank account do not necessarily represent taxable income to the owner of the account. They may represent nontaxable loan proceeds. Marcella v. Commissioner,222 F.2d 878 (8th Cir. 1955), affg. in part and remanding in part 13 T.C.M. 82; 23 P-H Memo T.C. par. 54,036 (1954). They may represent the receipt of funds solely as agent for another taxpayer. Brittingham v. Commissioner,57 T.C. 91 (1971). They may represent a mere transfer of the taxpayer's previously taxed funds from another source. See Vena v. Commissioner,T.C. Memo. 1970-44. Where a taxpayer does not keep adequate books and records and does have a likely source of taxable income, however, respondent may use deposits into the taxpayer's bank accounts as a starting point from which taxable income may be determined. Sec. 446(b); Harbin v. Commissioner,40 T.C. 373, 377 (1963); see Raskin v. Commissioner,T.C. Memo. 1981-153, *588 affd. in an unpublished opinion 685 F.2d 1219 (8th Cir. 1982). On the evidence before us, we conclude that the total deposits into petitioner's bank account in El Dorado should be regarded as taxable income. We so hold. More difficult is the question of the amount of deductible business expenses petitioner paid with those funds. Even if we were to agree with petitioner that his tax home remained in Pine Bluff, Arkansas while he worked on the oil wells, we could not allow petitioner additional business-related away-from-home travel expenses without the substantiation required under section 274(d); sec. 1.274-5(c), Income Tax Regs. Such substantiation has not been provided, and we deny petitioner any additional business-related away-from-home travel expenses. The evidence, however, does establish that petitioner incurred significant non-travel-related expenses pertaining to his work on the oil leases. Under the authority of Cohan v. Commissioner,39 F.2d 540 (2d Cir. 1930), petitioner asks the Court to allow him significantly greater business expense deductions relating to his work on the oil leases than respondent has allowed. Petitioner and his *589 nephew testified with some credibility that no profits were realized from the oil leases in any year, that petitioner received no salary, wage, or distribution of profits, and that essentially all funds deposited into petitioner's bank account were intended to either advance or reimburse petitioner for travel and non-travel-related expenses pertaining to the business. Petitioner and his nephew also testified with some particularity concerning the nature and type of non-travel-related expenses petitioner incurred. Our ability in this case under Cohan v. Commissioner, supra, to estimate allowable business expenses is hampered by the lack of documentation which would support a differentiation between amounts expended by petitioner for away-from-home travel-related expenses (to which Cohan does not apply) and deductible business expenses to which an estimate is permissible. Complicating matters further is the evidence that some of the funds deposited into petitioner's bank account were used by petitioner for personal expenditures. Based on our evaluation of the evidence, under Cohan v. Commissioner, supra, we estimate and allow petitioner business *590 expenses deductions (not covered by section 274) for each of the years before us beyond those already allowed by respondent, as follows: Expenses Allowed
1981
$ 1,267 1982
8,920   1983
7,800   1984
7,000   Respondent computed the tax deficiency at issue herein on a separate return basis. Petitioner asks that any deficiency be computed on a joint return basis. Petitioner did not file a joint return at anytime prior to the time this case was submitted for decision. On the facts before us, this issue is controlled by our opinion in Thompson v. Commissioner, 78 T.C. 558 (1982). The deficiency is to be determined on a separate return basis. Respondent contends that petitioner is liable for the self-employment tax with regard to the net income determined to have been received by petitioner during each year in dispute. The record is not clear as to the status of petitioner's work for Moro Bay Oil Co. If he was an independent contractor with respect to his work relating to the oil leases, income he received would be subject to self-employment tax under section 1401, as respondent contends. If petitioner *591 was an employee of Moro Bay Oil Co., income he received in regard to his work would not be subject to self-employment tax, and Moro Bay Oil Co. should have determined what portion of the funds deposited into petitioner's account represented taxable wage or salary income to petitioner, and it should have withheld employment taxes thereon. Sec. 3401. The limited authority on point is not consistent as to the employment status of individuals who maintain and repair isolated, independently owned oil wells. Cf. McAdams Drilling Co. v. United States, an unreported case ( N.D. Okla. 1962, 10 AFTR 6022, 62-2 USTC par. 9812), with Rev. Rul. 70-309, 1970-1 C.B. 199. Based on the inadequate development of the facts in this case, we find for respondent on this issue. See also Oller v. Commissioner,T.C. Memo. 1981-124. Petitioner is liable for the self-employment tax on the income determined in the instant case. The last issue concerns petitioner's liability for the additions to tax. Other than general testimony to the effect that petitioner did not believe he earned any income, we have scant evidence on this issue. We do not believe petitioner *592 intentionally attempted to evade his tax liabilities, but we cannot condone the apparent failure of petitioner to maintain adequate books and records to document the income and expenses relating to the oil leases. We sustain respondent's determination of each of the additions to tax. Decision will be entered under Rule 155.
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as in effect during the years in issue. ↩
*. 50 percent of the interest due on $ 1,934, $ 6,763, $ 5,201, and $ 3,573 for 1981, 1982, 1983, and 1984, respectively.↩