## FRIEDBERG *v.* UNITED STATES.

No. 18.   Argued October 20, 1954.—Decided December 6, 1954.

*Robert N. Gorman* argued the cause for petitioner. With him on the brief was *Stanley A. Silversteen.  Jas. W. Hengelbrok* entered an appearance for petitioner.

*Assistant Attorney General Holland* argued the cause for the United States.   With him on the brief were *Solicitor General Sobeloff, Marvin E. Frankel, Ellis N. Slack* and *David L. Luce.*

MR. JUSTICE CLARK delivered the opinion of the Court.

This is the second in the group of four cases involving income tax prosecutions under the net worth method of proof.   In this case petitioner was indicted for the years 1944 through 1947, and convicted on all counts except the first, covering the year 1944.

While the discussion in *Holland* v. *United States, ante,* p. 121, is dispositive of some of the more general problems raised by this type of prosecution, petitioner here directs his fire specifically at the sufficiency of the evidence as to his opening net worth.   To highlight his contention that the Government had not properly accounted for an alleged hoard of cash and bonds on hand at the beginning of the indictment period, petitioner has stipulated virtually every other net worth issue out of the case.

Although petitioner's testimony as to this cash on hand vacillated,[1] we conclude from a careful examination of the testimony that the largest amount claimed at the starting point was "far in excess" of $60,000.   The Government's evidence, as in *Holland,* did not directly dispute this, but it did painstakingly trace the Friedbergs' finances from 1922 through the prosecution years.   It pointed unmistakably to the conclusion that petitioner had no such hoard of cash at the starting point.

---

[1] Both Friedberg and his wife testified that he had "far in excess" of $50,000 by 1936; at another point he swore he had between $50,000 and $100,000 by that time; by 1938 he claimed "far in excess" of $60,000; and finally, he stated that he had "substantially" $100,000 by 1947.

This evidence, briefly outlined, was as follows: Petitioner filed no tax return for 1922, paid nominal taxes for 1923, 1924 and 1925, and, except for 1926, 1927, 1930 and 1937, when he filed nontaxable returns, he filed no returns from 1926 through 1937. He borrowed small sums of money on three occasions in 1931. In 1934, when he failed to pay $30 a month on a real estate mortgage, the mortgagee brought a foreclosure suit and petitioner was unable to meet the modest compromise terms offered him by the court. In 1936 and 1940, levies on a judgment for $13.76 were returned *nulla bona*. A mortgage on his former home was foreclosed in 1937, and a deficiency judgment entered for over $3,500. The writ of execution was returned "nothing found" in 1939, and petitioner then settled the judgment by paying $100 to the mortgagee in return for release from liability. In 1939, petitioner stated in an application for a loan that his total assets were $9,200, including $150 cash on hand, while his liabilities were $500. The tailoring business in which petitioner had worked since 1922 for an average pay of $50 a week was dissolved in 1941 because it could not meet its bills, and petitioner bought its assets for $650.

Yet it was during these years, from the 1920's until 1941, that petitioner claimed to have accumulated "far in excess" of $60,000. We think the jury could readily have concluded that petitioner had saved no such reserve.

Petitioner's other objections can be disposed of quickly. First, he contends it was error for the special agent, a witness for the Government, to give his "personal opinion" that petitioner had no cash on hand at the starting point. But this distorts what actually happened. The agent was asked on cross-examination to give a "yes or no" answer to whether in his net worth statement he had credited petitioner with any cash on hand for 1941. The agent said "there was no evidence available to show there was cash." After defense counsel's insistence that the

witness answer "did you or didn't you" give credit for any cash, the court allowed the agent to explain his answer. He explained that his investigation disclosed no evidence which would permit him to credit petitioner with cash on hand in 1941 and on redirect examination he elaborated, pointing out the foreclosures and the other evidence which has been detailed above. From this, he said, he "could see no reason why [he] should . . . include" any cash on hand at the starting point.

This was hardly a "conclusion of the witness," which is an "ultimate issue to be decided by the jury," as petitioner claims. The agent, upon petitioner's insistence, was testifying to a negative fact: he had not included cash because he had found no evidence of cash. The evidence which he then summarized on redirect was only that which had already been introduced at the trial. It is difficult to see how he invaded the province of the jury; nor do we see how petitioner's question could have been answered otherwise.

Finally, error is asserted in the trial judge's final instruction to the jury, which was given some three to four hours after it had begun its deliberations. Petitioner contends that the instruction called upon the jury to compromise the issues.[2] It may be that "compromise" in its literal sense, if used alone, would leave improper connotations. Though its use here was unfortunate, we do not think it misled the jury. We note that no objection was made

---

[2] The instruction was:

"The Court will stand in recess until one-thirty. The Court may say to the jury at this time that I want you to make an honest and sincere effort to reach an agreement as to the merits of this case. I do not want you to shirk your duty. I want you to be fair to the Government, the United States, and the defendant. Nevertheless, this case has taken many days to try, and I hope you will make a sincere effort to compromise and adjust your differences and reach a verdict, if possible."

to any of the instructions, nor was any of petitioner's oral argument devoted to them a week later on motion for a new trial. In fact, petitioner specifically disclaimed any intent to make the instruction now attacked a ground for a new trial. This is persuasive evidence that he did not originally consider this section of the charge prejudicial; and since the remaining instructions were fair and negatived any inference that a compromise verdict was permissible, we are inclined to agree. In the face of this record, we can hardly conclude that this error is sufficient ground for reversal.

*Affirmed.*