**Anthony MARCELLA and Bessie Marcella, Petitioners,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

**No. 15167.**

United States Court of Appeals Eighth Circuit.

June 1, 1955.

R. E. McGannon and Joseph A. Hoskins, Kansas City, Mo. (Harlow B. King, Kansas City, Mo., was with them on the brief), for petitioners.

Dudley J. Godfrey, Jr., Sp. Asst. to the Atty. Gen. (H. Brian Holland, Asst. Atty. Gen., and Ellis N. Slack, Hilbert P.

Zarky, and Karl Schmeidler, Sp. Assts. to the Atty. Gen., were on the brief), for respondent.

Before SANBORN, COLLET and VAN OOSTERHOUT, Circuit Judges.

VAN OOSTERHOUT, Circuit Judge.

Petitioners, Anthony and Bessie Marcella, are here asking for a review of the judgment of the Tax Court of the United States determining a deficiency in their 1947 income tax in the amount of $8,039.08 and a 50 per cent fraud penalty of $4,019.54. The deficiency determined by the Tax Court is slightly less than the amount determined by the Commissioner. Jurisdiction of this court is invoked under section 7482 of the Internal Revenue Code of 1954, 26 U.S.C.A.

The petitioners, who are husband and wife, filed a joint income tax return for 1947, claiming a loss of $4,800.97. Mrs. Marcella had no independent income, but is party to this case because she signed the joint return. Mr. Marcella, who will hereinafter be referred to as the taxpayer, was engaged in the retail liquor business in Kansas City, Missouri, in the capacity of sole proprietor of such business. He owned and operated three retail stores in which he sold liquor by the drink, bottle, and case. He also sold liquor by the case at his farm.

The Commissioner and the Tax Court found that taxpayer's books for 1947 were incomplete, lacked means of verification, and did not correctly reflect his income, and consequently determined taxpayer's income by a method which they described as "excess cash expenditures method." The facts will be developed hereinafter.

The taxpayer asserts that the Tax Court in reaching its decision committed error in the following respects:

1. In finding that taxpayer's books and records were inadequate and that reasonable grounds existed for disregarding them.

2. In holding the Commissioner's peculiar and novel personal cash expenditures method of constructing taxable income was valid and accurate, and that, in any event, such method, if available, was improperly applied in that proven sources of cash available were not recognized and considered.

3. In disregarding a portion of proven capital additions to taxpayer's residence which would increase the adjusted basis of his property to an amount in excess of the sales price.

4. In holding that the evidence justified a finding that at least part of taxpayer's deficiency in income tax was due to fraud with intent to evade tax.

We now proceed with the consideration of the alleged errors.

1. Taxpayer during 1947 employed Mr. H. A. Brockhouse, a Federal Reserve Bank examiner, on a part-time basis to keep his books for him. Mr. Brockhouse's integrity is not challenged. Proper records subject to verification were kept as to the sale of liquor by the drink and bottle at the three retail stores and as to expenses and salaries, the original entries being by adding machine tapes and records maintained by the employees. Such records are not challenged. The controversy arises in connection with liquor sales by the case at the three stores and the farm. The case sales represent over 60 per cent of taxpayer's sales volume of over half a million dollars. No sales slips or original records of any kind were made as to the case sales at the retail stores or at the farm. It is obvious that the failure to make any record of the case sales at the taverns was at the taxpayer's direction. Apparently all the sales at the farm were by the taxpayer himself. Brockhouse had no means of verifying the case sales, and was also apparently unaware of the fact that case lots were being sold at the farm. Brockhouse testified that at infrequent intervals, sometimes over a month apart, the taxpayer would orally report case sales to him. The taxpayer would specify the brand and number of cases sold and the amount received above invoice cost. Brockhouse would usually be able to find the purchase invoices and make his com-

putation on the basis of the oral information supplied and the invoices, and would make entries in taxpayer's books accordingly. The record discloses that the method of bookkeeping was rather unusual. As to this Brockhouse testified, " * * * and in this instance I grant you that these books are rather unorthodox, but that doesn't say they are false."

Section 54 of the Internal Revenue Code of 1939, 26 U.S.C. § 54, requires the taxpayer to keep such records as the Commissioner with the approval of the Secretary may prescribe. Section 29.54–1, as amended, of Treasury Regulations 111 states:

> "Every person subject to tax * * * shall, for the purpose of enabling the Commissioner to determine the correct amount of income subject to the tax, keep such permanent books of account or records, including inventories, as are sufficient to establish the amount of the gross income and the deductions, credits, and other matters required to be shown in any return under chapter 1."

■ The taxpayer has made some inconsistent statements. He has several felony convictions and has used a number of aliases. He has made no explanation of his lack of adequate records as to case sales. The determination of the Commissioner and the Tax Court that the books of the taxpayer are incomplete, lack means of verification, and do not correctly reflect the taxpayer's income is fully justified by the record in this case.

■■ 2. The Commissioner's determination of the amount of taxpayer's income and the existence of a deficiency is prima facie correct. The burden is on the taxpayer to disprove the Commissioner's determination. Welch v. Helvering, 290 U.S. 111, 115, 54 S.Ct. 8, 78 L.Ed. 212; Helvering v. Gowran, 302 U.S. 238, 245, 58 S.Ct. 154, 82 L.Ed. 224. The decisions of the Tax Court are to be reviewed in the same manner as decisions of the district court in civil actions tried without a jury. § 7482, Internal Revenue Code of 1954; Rule 52(a), Federal Rules of Civil Procedure, 28 U.S.C. Findings of fact by the Tax Court are not binding upon this court if there is no substantial evidence to sustain them, if they are against the clear weight of the evidence, or if they are induced by an erroneous view of the law. United States v. U. S. Gypsum Co., 333 U.S. 364, 68 S.Ct. 525, 92 L.Ed. 746; Aetna Life Ins. Co. v. Kepler, 8 Cir., 116 F.2d 1, 4; Pendergrass v. New York Life Ins. Co., 8 Cir., 181 F.2d 136.

■■ In the U. S. Gypsum Co., case, supra, 333 U.S. at page 395, 68 S.Ct. at page 542, the court states:

> "The findings were never conclusive, however. A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."

In the Pendergrass case, supra, 181 F.2d at page 138, this court said:

> " * * * The findings of fact of a trial court should be accepted by this Court as being correct unless it can be clearly demonstrated that they are without adequate evidentiary support or were induced by an erroneous view of the law. * * * "

Governed by the foregoing rules we proceed to determine whether the findings upon which the deficiency tax is based are clearly erroneous. The Commissioner, after properly finding that taxpayer's records do not clearly reflect his net income, is authorized to compute the taxpayer's net income "in accordance with such method as in the opinion of the Commissioner does clearly reflect the income." 26 U.S.C. § 41. No specific alternate methods of computing net income are prescribed by statute. Undoubtedly, the Commissioner is required to use a method which clearly and fairly reflects the taxpayer's income. The burden is upon the taxpayer to show that the

method used or its application is improper or arbitrary. The method employed by the Commissioner in determining the taxpayer's income is described in the Tax Court's opinion and in the Commissioner's brief as "excess cash expenditures." The basis of the deficiency determination made by the Commissioner is shown by the following statement:

"Sources of Cash

| | |
|---|---|
| Bank accounts | $10,956.71 |
| Sale of one of taverns | 4,500.00(a) |
| Increase mortgage on home | 2,500.00 |
| Sale of house at 405 Gladstone | 17,500.00 |
| Total | $35,456.71(b) |

"Personal Expenditures.

| | |
|---|---|
| Federal income tax including interest of $291.17 | $12,682.39(b) |
| Personal expenses by checks | 11,670.36(b) |
| Furniture | 4,051.84(c) |
| Payment on farm at 13203 Wornall Road, including expenses of $5,826.71 | 9,826.71 |
| Paid on home, 804 W. 64th Terrace | 15,000.00 |
| Mortgage payments, 804 W. 64th Terrace | 6,093.32 |
| Checks out of proceeds of sale of 405 Gladstone endorsed to Hamm-Singer Co. | 2,000.00(d) |
| McKesson-Robbins | 500.00(d) |
| Medical expense | 455.15 |
| Total | $62,279.77(e) |

"(a) The sale was not reported by the petitioner in his return for 1947.

"(b) The parties entered into oral stipulations at the hearing that these figures are correct except for the right reserved by petitioner to establish additional sources of cash.

"(c) Respondent concedes that the figure should be $3,876.98 on account of a duplication of $174.86.

"(d) These amounts were used by petitioner in the purchase of liquor for sale in his taverns.

"(e) The parties stipulated that disbursements of this amount were made without agreeing that all of the items were of a personal nature.

"The difference of $26,823.06 between the expenditures and sources of cash was regarded by the respondent as unreported taxable income in determining the deficiency."

The Tax Court deducted $3,811.07 from the personal expenditures, representing $2,500 paid for liquor, and the balance being for adjustment of errors, contributions, and interest paid. This reduced the excess claimed expenditures to $23,011.99.

The taxpayer contends that he had cash available for personal expenditures from the following sources:

(1) Cash available due to reduction in paid inventory in 1947, $27,497.83, arrived at as follows:

(a) Decrease in inventory during the year from $97,182.42 to $90,433.26;

(b) Increase during year of accounts payable to suppliers from $24,729.16 to $45,477.83.

(2) Increase in notes payable to banks during 1947 from $65,223.25 to $82,713.96, or $17,490.71.

(3) Failure to allow depreciation claimed in return in the amount of $761.66.

As to the depreciation item, the Tax Court found there was no proof that depreciation had been sustained. We agree.

It is noted that in the foregoing statement of cash available no allowance is made for nontaxable cash that might be available to the taxpayer from his substantial business interests.

As to the inventory item, there is evidence that the inventories were made by

the taxpayer and his employees and that the inventories were produced at the trial. The Tax Court made the following finding as to accounts payable:

"The books of 11 wholesalers from which petitioner purchased liquor for sale disclose that his debts to them for the goods increased from $24,729.16 on January 1, 1947, to $45,471.83 at the close of the year."

The Tax Court's findings as to increase in bank loans are:

"The evidence offered to prove an increase during 1947 of $17,490.71 in loans from banks is confined to books of the creditors. The notes given to evidence the loans were not entered in the books of petitioner. To obtain any benefit from an increase in borrowed funds there must be evidence establishing that the funds were used to pay personal expenses. Such proof was not made."

The taxpayer did much of his business on a cash basis. He handled the cash personally, sometimes in considerable amounts. Much of it never reached his bank account. On some days the cash receipts were substantial. The taxpayer contended that he had $8,500 in cash money on hand at the start of 1947. This is contradicted by the examiner's testimony that he was told by the taxpayer that he had but $1,000 cash on hand at that time. The examiner gave the taxpayer no credit for any cash money available at the start of 1947, giving as a reason that he was not able to determine the amount. No finding is made by the Tax Court as to cash money available at the start of 1947, unless a negative finding be implied from the lack of any such item in the cash available statement.

We find no justifiable basis for the Tax Court's failure to consider the $17,490.71 increase in bank loans as a source of cash available to the taxpayer. The rejection of this item as a source of cash available was apparently upon the basis that the taxpayer had not proven the proceeds of the increased loans were used for personal expenditures. We do not deem such proof necessary. As previously stated, the taxpayer owned the liquor stores as sole proprietor. All assets and receipts from the business were fully available to him for any use he cared to make of them. If the proceeds of the loans were used to pay business expenses, this would free a like amount of business receipts for personal expenses, since expense items that were paid out of loan proceeds would not have to be paid out of business receipts. While much of the taxpayer's testimony relative to increased cash available due to decrease in paid business inventory was not disputed, the Tax Court was not compelled to accept this testimony. The trial court is not compelled to believe evidence which to it seems improbable, or to accept as true uncorroborated evidence of interested witnesses even though uncontradicted. Noland v. Buffalo Ins. Co., 8 Cir., 181 F.2d 735, 738; Elzig v. Gudwangen, 8 Cir., 91 F.2d 434, 440. The Commissioner contends that the testimony as to accounts payable to wholesalers is of no value to taxpayer because it was not corroborated, and for the further reason that all wholesalers did not testify. A conclusion that no cash was shown to be available because of decrease in paid inventory, while extreme under the record here made, is not clearly erroneous.

Apparently what the Commissioner did and what the Tax Court approved was to strike a balance between non-business available cash and personal expenditures, and call the difference taxable income, disregarding completely any sources of nontaxable cash available from the business enterprise. The taxpayer was entitled to have nontaxable cash available from his business added to the sources of cash available with which he was credited.

The Tax Court, in approving the excess cash expenditures method here used, relies upon Halle v. Commissioner, 2 Cir., 175 F.2d 500, and Cohen v. Commissioner, 10 Cir., 176 F.2d 394. In the Halle case the procedure was to consider as

income all deposits shown in taxpayer's bank and brokerage accounts which taxpayer could not show to be nontaxable. In the Cohen case the Commissioner started with the assumption that the taxpayer was broke in 1936, the first year for which a deficiency was claimed. The court found that the taxpayer's return prior to 1936 reflected no income, and that on the record the Commissioner's conclusion that the taxpayer had no assets in 1936 was not clearly erroneous. Neither of the cases relied upon justify the method of establishing unreported income attempted here. The Halle case involved the bank deposit method. In the Cohen case the Commissioner's conclusion that the taxpayer was broke at the start of the period was found to be supported by evidence. There is absolutely no showing in the present case that the taxpayer was broke at the start of 1947.

The Commissioner in his brief, in addition to the cases cited by the Tax Court, urges that the excess cash expenditures method used is supported by the following cases: Friedberg v. United States, 348 U.S. 142, 75 S.Ct. 138; Holland v. United States, 348 U.S. 121, 75 S.Ct. 127; Smith v. United States, 348 U.S. 147, 75 S.Ct. 194; United States v. Calderon, 348 U.S. 160, 75 S.Ct. 186; United States v. Caserta, 3 Cir., 199 F.2d 905; United States v. Johnson, 319 U.S. 503, 63 S.Ct. 1233, 87 L.Ed. 1546. None of the cited cases supports the Tax Court's decision in this case. In the Johnson case the tax evasion conviction of Johnson, who was described as a gambler on a magnificent scale, was sustained on proof that the taxpayer's private expenditures had exceeded his available declared resources, and proof that substantial gambling winnings were not reported. In the Caserta case the expenditures method was used. It is there explained as follows, 199 F.2d at pages 906–907:

"An outgrowth of this net worth method is the 'expenditure' test involved in this case. The theory of it is simple, though its application may become difficult. It starts with an appraisal of the taxpayer's net worth situation at the beginning of a period. He may have much or he may have nothing. If, during that period, his expenditures have exceeded the amount he has returned as income and his net worth at the end of the period is the same as it was at the beginning (or any difference accounted for), then it may be concluded that his income tax return shows less income that he has in fact received. Of course it is necessary, so far as possible, to negative nontaxable receipts by the taxpayer during the period in question. * * *"

The remaining cases relied upon by the Commissioner involve the use of the net worth method and approve such method if proper care is exercised in its use.

In the present case no effort was made to show any opening net worth or any change in the taxpayer's net worth during the taxable period. The net worth cases do not afford support for the method of determining income used in this case.

The taxpayer paid income taxes as follows: $20,000 in 1943; $31,000 in 1944; $39,000 in 1945, and $37,880.24 in 1946. The taxpayer in answer to questions by the court testified as follows:

"The Court: Why did you make so much in the previous years and so little in '47?

"The Witness: Well, your Honor, it is like this, in those years whiskey was scarce. In '47 the market fell down. The bottom dropped out of the whiskey business.

"The Court: Why did it drop out?

"The Witness: It got plentiful and everybody wanted to liquidate their stock and whiskey got cheap.

"The Court: There must have been a war on here.

"The Witness: They had a whiskey war on here. Merchandise was sold that even the Government tax,

I lost money, they sold less than Government tax on the case."

The witness further testified that prior to 1947 his profit was $5 to $7 a case and that in 1947 it was $1.50 to $2 a case. This evidence is not contradicted. It could readily have been refuted if not true. This evidence as to the liquor war and decreased profits is not conclusive and would not in itself be sufficient to offset a finding of unreported income based on a recognized alternate method of computation.

■ Since neither the Commissioner nor the Tax Court gave consideration to sources of nontaxable cash available to the taxpayer from his substantial business interests, the deficiency determination made by the Tax Court is clearly erroneous in that it was induced by an erroneous view of the law and is not supported by substantial evidence.

■ 3. The Commissioner determined the capital gain on the sale of taxpayer's residence was $4,369.58 rather than a loss as claimed by the taxpayer. In so doing, he allowed capital additions aggregating $8,130.42. The Tax Court allowed further capital additions in the amount of $1,954.75, reducing the capital gain to $2,414.83. The record does not indicate with exactness which capital gain claims were disallowed. As near as we can gather the disallowed items pertain to interior decorating, plastering, a water heater, and window shades. The Commissioner claimed that such items were upkeep expenses under Treasury Regulations 118, sections 39.23(a) (4) and 39.24(a) (2). Neither the record, the Tax Court's opinion, nor the taxpayer's brief shows the exact nature of the expenditures. The taxpayer has failed to meet the burden resting upon him to show that the rejected expenditures come within the capital improvement classification defined by the Treasury Regulations. Under the record made here we can not say that the findings of the Tax Court with respect to the items are clearly erroneous.

4. As to the fraud issue, a 50 per cent penalty is authorized when any part of the deficiency is due to fraud with intent to evade the tax. 26 U.S.C. § 293(b). The burden of proof on the fraud issue is upon the Commissioner. 26 U.S.C. § 1112. We have heretofore held that the method of computation used by the Commissioner in this case was erroneous. The disallowance of some controversial capital improvements as to which there could be an honest difference of opinion in connection with the house sale transaction is in itself not enough to support a finding of fraud. If a case is made out establishing a substantial deficiency in tax through the use of some recognized and approved alternate method, there would be evidence in this record to support a finding on the fraud issue.

■ Section 7482(c) (1) of the Internal Revenue Code of 1954 provides:

"Upon such review, such courts shall have power to affirm or, if the decision of the Tax Court is not in accordance with law, to modify or to reverse the decision of the Tax Court, with or without remanding the case for a rehearing, as justice may require."

Under proper circumstances a case may be remanded to the Tax Court for further consideration. Timmons v. Commissioner, 4 Cir., 198 F.2d 142. The record in this case fully justified the Commissioner's action in discarding the taxpayer's records and making a determination of tax liability by an approved alternate method.

■ We have heretofore held that the Commissioner and the Tax Court erred in not giving consideration to nontaxable cash that might be available to taxpayer for personal expenditures from his business enterprises. We feel that justice requires that this case be remanded to the Tax Court for a determination of any deficiency that may be due from the taxpayer by any approved and recognized alternate method. Since

886

the determination of the tax liability will have an important bearing on the fraud issue, the case should also be remanded for retrial on such issue.

The decision of the Tax Court as to the profit realized from the sale of the home is affirmed. As to all other issues the decision appealed from is vacated, and this case is remanded to the Tax Court for the determination of the amount of tax, if any, that may be due from the taxpayer through the use of any approved alternate method, and for the determination of the fraud penalty issue. Either party should be permitted to introduce further evidence if desired.