**Raymond J. KASPER, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 14492.**

United States Court of Appeals Ninth Circuit.

July 11, 1955.

276

Davis & Colvin, Reynold H. Colvin, Sidney Feinberg, San Francisco, Cal., for appellant.

Lloyd H. Burke, U. S. Atty., Robert H. Schnacke, Richard Foster, Asst. U. S. Attys., San Francisco, Cal., for appellee.

Before McALLISTER, FEE, and CHAMBERS, Circuit Judges.

McALLISTER, Circuit Judge.

Appellant was convicted of attempting to defeat and evade income taxes by filing false and fraudulent returns for the years 1947 and 1948, in which he understated the income of his wife and himself for the two years by a total of $42,509.29, and evaded payment of taxes in the sum of $15,041.14. He appeals, claiming that the trial court erred in the denial of his motion for judgment of acquittal on the ground that there was no substantial evidence to support the verdict; that the court erred in admitting certain evidence and in instructions to the jury; and that the district attorney, during the cross-examination of a witness, was guilty of prejudicial conduct which requires reversal.

Appellant is a physician who began his practice in 1934 in Wahoo, Nebraska, a town of 3,000 inhabitants. He left Nebraska in 1942 to work for a few months in a railroad hospital in Missouri at a salary of $175 a month, and thereafter, in the same year, came to Fresno, California, and went to work for another doctor at a salary of $500 a month. He continued this work until sometime in 1943, when he began to practice for himself, which he continued through and after the year 1948.

Appellant's income was computed on the net worth basis. As of October, 1936, his net assets were, by his own statement, far less than $8,000, and did not become more than that amount during any of the time he lived in Nebraska. From the time he came to Fresno, in 1942, up to the end of 1948, his net worth had increased to more than $90,000; and during that entire period, he had reported a total income of less than $38,000. The Commissioner, by use of the net worth computation, showed unreported income of $29,624.50 for 1947, and $7,842.14 for 1948.

Appellant sought to account for the increase in his wealth which occurred after his arrival in Fresno by his testimony that he had $40,000 in cash which he had kept hidden in a hollow tile in his cellar in Nebraska, and that he had brought this cash with him to California

in 1942. He accounted for having this money on hand by the claim that he had received $12,000 in cash from his mother, who gave it to him in an envelope shortly before her death in 1939, and that he had saved between $300 and $400 a month from his medical practice in Nebraska during the last few years there, although he stated that the practice never produced more than a gross of $5,000 per year.

The reason that appellant gave for hiding this large amount of cash in the hollow tile was that a financial institution in which he had a deposit in Omaha in 1929 was thereafter restricted in payments to depositors, although it did not close its doors, and, as a further reason, that three out of four banks in Wahoo, Nebraska, had failed during 1929.

However, it appears from the evidence that while in Wahoo, appellant had made a number of small loans from the bank there in amounts ranging from $70 to $475, at interest rates of 7% and 8%. He testified that he made these loans not because he needed the money, but to establish his credit by borrowing and promptly repaying. However, he could not explain why, after eight years, he still was trying to establish his credit by making a loan of $200 at 7% just two months before he left Wahoo. It also appeared from the government's evidence that appellant was in poor financial circumstances during his practice in Nebraska, and that he had told one of his doctor friends that his practice there was very lean; that he wasn't making a go of it; and that he didn't have enough money to pay his dues to the medical society. In each of the years, 1936 to 1946, inclusive, appellant stated under oath to the Tax Collector at Wahoo, Nebraska, that he had no unbanked cash in his possession except $90 in 1939, $200 in 1940, and $100 in 1941. Within two months of his arrival in California in 1942, he asked for and received an advance of salary in the amount of $200 from his employer.

After his first few years of practice in Fresno, appellant carried on all important transactions in cash rather than by check. In the construction of his home during a later time, at a cost of $43,298.-62, he paid the contractor $29,273.13 in cash in a number of different payments, and the balance, by three checks drawn by others to appellant or his wife, and endorsed over to the contractor. Checks received by him for services rendered to patients were not generally deposited in the commercial account maintained by him, but, instead, were used to make payments on appellant's bank loans, or were cashed, or used to purchase cashier's checks or money orders. He also paid substantial amounts of cash to purchase savings bonds. When the Internal Revenue agent sought to examine appellant's records, he was told that some had been destroyed. Appellant used, as basic records in computing his income from his medical practice, cards for patients, and a date book or log book. The separate card for each patient contained the date, charge, payment, and balance owing, and charges and payments were entered daily from the patient cards to the log book. Appellant claimed to have only eight cards for the year 1947, and about thirty, for the year 1948. The other cards for years before 1949 were destroyed by appellant, as well as the log books for the years 1944 to 1950, for reasons given by appellant which the jury probably found unconvincing. Appellant had received no inheritances, and could not think of any gifts he had received during the years 1947 or 1948.

Appellant did not defend upon the ground that the government's net worth calculations were wrong as to his net worth as of December 31, 1947, and December 31, 1948, but, on the other hand, maintained that his net worth on December 31, 1946, was considerably greater than the government calculated it to be. The difference, he stated, arose primarily out of the fact claimed by him as to the $43,000 in cash which he maintained was in his possession when he came to Cali-

fornia in 1942, and which he insists the government failed to give him credit for in its net worth computations. He further maintained that his taxable income during the years 1947 and 1948 had been truthfully reported on the tax returns for the years in question.

■ The government, in order to sustain the burden of proving a net worth case of income tax evasion, must produce evidence that increases in appellant's net worth for the tax years in question were attributable to currently taxable income, or must produce evidence from which the jury can infer that fact. Holland v. United States, 348 U.S. 121, 75 S.Ct. 127. The government, in the instant case, established that appellant was in an income-producing business. We must assume from the jury's verdict that they did not believe appellant's story that he came to Fresno in 1942 with $40,000 that he had received in cash from his mother and from professional fees, which he had kept hidden in a hollow tile in his cellar; and that, accordingly, he did not have such a cash reserve to start with.

■ According to his own figures, appellant performed medical services for which he charged an average of $24,480 in each of the two years of 1947 and 1948. But, according to appellant, his patients never paid one-third of these charges. Whatever the case, appellant's medical practice produced substantial income. It was, of course, impossible for the government to prove any specific items of unreported income because appellant had destroyed all of his records from which such items of income could be ascertained, and, in addition, had refused to allow the revenue agents to ascertain the names of any of his patients in order to find out what he had charged and received.

The possible source of income was adequately demonstrated, together with the substantial increase in net worth during the years in question, and this properly gives rise to the inference that the net worth increase derived from unreported income from the practice of medicine, especially in view of the fact of appellant's destruction of all records that would show what the actual receipts from his medical practice might have been.

As to the argument that the government did not negate all sources of nontaxable income for the years in question, the agent, in the course of his investigation of appellant's assets and liabilities, checked all banks in the area, as well as the records in recorders' offices, assessors' offices, insurance companies, department stores, and the like, and found no leads to any loans, assets, or liabilities of appellant other than reflected in the net worth statement. Appellant never, at any time, either before or during his trial, suggested any leads as to possible kinds of nontaxable income as the source of his expenditures. The evidence clearly established the increase in appellant's net worth and the only leads supplied by appellant to prove that the net worth income was attributable to prior accumulations of cash could be and were readily disbelieved by the jury. A likely source of unreported, taxable income was demonstrated which was adequate to support the inference that the increase in net worth was attributable to currently taxable income. Furthermore, the evidence indicated that the funds expended by appellant during the years, 1947 and 1948, had not been derived from nontaxable sources. Holland v. United States, supra; Friedberg v. United States, 348 U. S. 142, 146, 75 S.Ct. 138. The district court was not in error in denying appellant's motion for a judgment of acquittal.

■ As to the court's instruction that character evidence "is to be considered by you along with all of the other evidence in the case in determining the guilt or innocence of the defendant," this was not erroneous; and it was not necessary to charge upon this subject in the language of appellant's proffered instructions. The court fully instructed the jury on the question of reasonable doubt, clearly charging them that they must ac-

quit if, from all of the evidence including the character evidence, they had a reasonable doubt of appellant's guilt.

■ Appellant contends that the trial court erred in instructing the jury as to a certain payment claimed to have been made to him by a patient. Evidence was introduced and appellant testified, on cross-examination, that he had received $2,500 under the following circumstances: Appellant had received a call one night from a man whose name he did not disclose, and, in answering the call, he went to a hotel where he treated a woman for injuries suffered when the man had mutilated her with a broken bottle. Subsequently, the man paid appellant for his services. The mutilation, which was, of course, a criminal offense, was not reported to the police; but sometime afterward, appellant claimed that he had received $2,500 in cash through the mail from someone who remained anonymous but whose initials corresponded with those of the man whose identity was not disclosed on the trial. Appellant testified that he had considered the $2,500 a gift. The court instructed the jury: "You have one issue in this case that may or may not enter into your consideration in determining the ultimate fact in the case. There was reference in the testimony to a so-called payment of $2500 to the defendant by a man who [sic], under circumstances that were described as warranting the inference that it was a gift. Now, the jury will have to determine, if that enters into your consideration in the ultimate outcome of the case, as to whether or not that $2500 payment was a gift or whether or not it was in response to some act done or not done on behalf of the giver by the recipient of the gift." Appellant contends that this instruction was unnecessary because the issue could not enter into the case for the reason that the incident did not occur during the tax years; that it was not an element in the proof of net worth; and that it was prejudicial in that it focused the attention of the jury on a transaction which might have reflected adversely on the character of appellant. It seems as though the instruction was directed to appellant's credibility as a witness. He had claimed that other sums of money had been similarly received by him from patients as gifts rather than as payment for professional fees. If the jury did not believe him in the matter of these claimed gifts, they could disbelieve him in other matters. It is to be said, nevertheless, that it is not entirely clear what the instruction was pointed at; but if there was any error in the failure of the court to be specific as to the bearing of such evidence, it cannot be held to have affected any of appellant's substantial rights, and must be considered as harmless. Rule 52, Federal Rules of Criminal Procedure, 18 U.S.C.A.

■■ Error is also assigned because of claimed prejudicial misconduct of the district attorney in cross-examining one of appellant's character witnesses by asking the question: "Did you know or have you heard that Doctor Kasper was discharged by Doctor Burks for dishonesty?" The rule is settled that in cross-examining a character witness, the proper form of the above question is: "Have you heard?" Michelson v. United States, 335 U.S. 469, 69 S.Ct. 213, 93 L.Ed. 168; Stewart v. United States, 70 App.D.C. 101, 104 F.2d 234. At the time the question was asked, objection was not made to its form or that the question assumed a fact not in evidence, but it was objected to on the general grounds that it was incompetent, irrelevant, and immaterial. When the court overruled the objection, stating that it assumed that it was asked in good faith, no further grounds of objection were stated. The witness replied that he knew appellant had been discharged. Thereafter, the district attorney proceeded to ask: "Had you known that, would that have affected your opinion?" The court sustained appellant's objection to this question. However, while the first question should not have been asked in the form it was, and the second question was objectionable, there is nothing that indicates, or convinces

us, that they affected the substantial rights of the appellant to a fair trial, or resulted in a miscarriage of justice. See Green v. United States, 10 Cir., 93 F.2d 537; Westfall v. United States, 6 Cir., 2 F.2d 973.

 Appellant further claims error in the introduction in evidence of photostatic copies of the joint returns of his wife and himself, to which were attached certifications setting forth that the returns were involved in criminal or civil investigation which had not been completed at the time such returns were to be destroyed. It is claimed that the exhibits with these certifications raised an inference that appellant had been in difficulty with the Internal Revenue Service before and that their introduction was prejudicial to him. The only objection to their introduction was that they were incompetent, irrelevant, and immaterial. The certifications were not mentioned nor was any objection made to them. If there had been any such objection, it would have been an easy matter to remove the certifications from the returns. In any event, there was no harm to appellant by reason of the language of the certifications. The fact that the criminal trial was in progress obviously showed that it had been preceded by an investigation, and the certifications, therefore, added nothing from which the jury could have drawn inferences prejudicial to appellant.

We have reviewed the instructions on net worth which appellant claims were misleading, confusing, and prejudicial. We find that, read as a whole, the instructions were clear and calculated to inform the jury properly of the facts, the law, and the issues in the case. Other instructions proffered by appellant and refused by the trial court were either inaccurate or were fully covered by the instructions given.

No reversible error appearing, the judgment of the district court is affirmed.