**UNITED STATES of America**

v.

**John J. O'MALLEY.**

**Cr. No. 16658.**

United States District Court
E. D. Pennsylvania.

June 3, 1955.

Fred. G. Folsom, Special Asst. to the Atty. Gen., W. Wilson White, U. S. Atty., Philadelphia, Pa., for plaintiff.

Lemuel B. Schofield, Marvin Comisky, Philadelphia, Pa., for defendant.

CLARY, District Judge.

There is presently before the Court for disposition defendant's motion for judgment of acquittal. John J. O'Malley, defendant herein, was originally indicted on two counts charging income tax evasions for the years 1945 and 1946, in violation of Section 145(b) of the Internal Revenue Code, 26 U.S.C. § 145(b). After a first trial lasting some twenty-one trial days, the Presiding Judge entered a judgment of acquittal as to Count I of the indictment covering the year 1945 in which the evasion was alleged to be in excess of $49,000. Upon timely motion, after a verdict of guilty by the jury on Count II covering the year 1946, Judge Allan K. Grim for the reasons set forth in his opinion, United States v. O'Malley, D.C., 117 F.Supp. 895, granted a new trial. At the second trial, which consumed fourteen days, the Government attempted to prove a tax evasion of approximately $63,000 for the year 1946, the indictment having charged an evasion of taxes for that year exceeding $125,000. When it became apparent that the jury could not agree after extensive deliberations, the Court declared a mistrial and discharged the jury. The defendant thereupon renewed in writing the motion made at the conclusion of the case for judgment of acquittal.

The O'Malley tax case has a long history. John J. O'Malley, the defendant herein, had for upwards of twenty years been under almost constant investigation by the Bureau of Internal Revenue. He was the subject of an investigation in the mid-thirties and as part of that investigation furnished the Government under date of January 18, 1939 a statement of his assets and liabilities as of August 14, 1930. Other data furnished was a statement of income from January 1, 1924 to December 31, 1930, and supporting documents in connection with his then financial condition. The Commissioner of Internal Revenue never assessed any deficiency in taxes for the period covered by that investigation. Another intensive investigation was inaugurated in June of 1948, out of which resulted the present indictment. As part of the investigation and at the request of agents of the Bureau of Internal Revenue, the defendant on November 16, 1950, through his accountants, Livingston, Montgomery & Company, furnished the Bureau with an analysis of increase in net worth, which statement covered the period from August 14, 1930 to December 31, 1943, both for himself and his wife. Other supporting documents included balance sheets for himself and his wife for the years ending 1943 through 1949 inclusive; a reconcilement of income to increase in net worth for both husband and wife for the years 1944 through 1949 inclusive; a balance sheet as of November 14, 1950, and an analysis of increase in net worth from January 1, 1950 to November 14, 1950.

The Government took as its starting point to prove the net worth of the defendant on January 1, 1946, the first day of the crucial year, the balance sheet as of August 14, 1930 furnished the Bureau by the defendant on January 18, 1939, and estimated his net worth on January 1, 1946 as $64,606.56, a figure which will be discussed hereafter. It then attempted to establish his net worth as of December 31, 1946, the last day of the crucial year, in the sum of $179,696.-12, which amount included admitted acquisitions of assets during the prosecution year. Basically, the Government's case depended upon its proof of (1) no cash resources at the start of the prosecution year; (2) the falsity of certain loans alleged to have been made by the defendant in 1946 for the purchase of securities, and (3) proof that an item which appeared in the books of account of the Carson Packing Company, of which company defendant was a partner, was taxable income. The tax due on these three items when added together substantially constituted the deficiency in tax which the Government contended had been willfully evaded.

It is obviously impossible in a short opinion to recount in detail the evidence adduced in fourteen days of trial. The theory of the Government's case was that on the basis of its proof, the defendant's net worth during the year 1946 increased some $120,000; that such increase was not attributable to gifts, inheritances, loans, or other nontaxable sources, and that the increase constituted a measure of taxable income. To establish this the Government started, as stated above, with the balance sheet of August 14, 1930 and attempted to show what funds had been available in the form of income (taxable and nontaxable) to both the defendant and his wife between August 14, 1930 and December 31, 1945. Outlining all known financial transactions in which either the defendant or his wife participated between the years 1930 and 1945 and making allowance for all investments and expenditures of which it had knowledge during those years, the Government presented for consideration a balance sheet showing the defendant to have a net worth of $64,-606.56. The net worth figure at the starting point for the crucial year of 1946 was calculated by the "net worth method" from income and expenditures covering fifteen years. In other words, this case involves really the determination of both the starting and final figures purely by net worth computations.

In its case in chief, specifically, the Government undertook to show that

claimed cash assets of $20,500 and loans of $86,500 set forth in defendant's balance sheet for the year 1946 were substantially false and fictitious. By its calculations in its "net worth" computations for the years 1930–1945 the Government charged that not only could there be no cash assets but actually there was a deficiency of cash-on-hand on defendant's part on January 1, 1946.

In the Government's case, primarily from cross-examination of Government witnesses, there was elicited uncontradicted evidence that in 1924 the defendant had a net worth of $28,000; in 1930 $49,000; and that he had claimed an increased net worth in 1937 of over $80,000. The 1924 and 1930 figures were substantiated by written documents. The claim of increased net worth for 1937 was made during the first investigation and for a year for which the defendant was examined and audited by the Bureau of Internal Revenue. No specific evidence was introduced by the Government with respect to that figure and no calculation of net worth of the defendant at that time was made in the Government's case. Notwithstanding these circumstances and despite the fact that during the succeeding years the defendant and his wife made substantial and lucrative investments, all of which produced income, and during which time the defendant was gainfully employed as a public official, without attempting to show any extraordinary disbursements or loss of assets in the intervening years, the Government asserted for the purposes of this case that the net worth of the defendant, instead of increasing, had substantially diminished on January 1, 1946 to the amount of $64,000.

There was also uncontradicted evidence, again elicited primarily on cross-examination, that the defendant had, and that the Government had knowledge that he had, dealt in substantial cash sums during the intervening years. The Government conceded that the defendant had cooperated with it in its investigation. In support of his contention that he did possess a substantial sum of cash, de-fendant permitted Government agents during the course of the investigations to visit and open his safety deposit box where, upon examination, the agents found many thousands of dollars in cash. Further uncontradicted testimony also established that as early as the year 1937, defendant's wife possessed cash assets of at least $53,000 or $54,000, the disposition of which is not clear from the record made in this case. Under such circumstances the evidence, all adduced in the Government's case, falls far short of the substantial proof necessary to establish a total lack of cash resources on January 1, 1946.

Another important and substantial aspect of the Government's case rested in its attempted negation of some $57,500 of the $86,500 in loans alleged by the defendant to have been made for the purchase of stocks and bonds during the year 1946. In the Government's investigation the agents made some inquiries both of the defendant and his accountants as to the source of the loans. All of the defendant's books and records were in the possession of his accountants. From the defendant himself the agents learned the source of two of the loans totalling $38,000. Additionally the agents were informed by his accountants as to the source of loans totalling $38,-500.00, leaving a balance of $10,000 about which the agents were not informed as to source. Certain of the sources were checked by the agents and of those sources checked each verified the loan as stated by either the defendant or his accountants. However, and as a substantial part of the deficiency alleged, the Government disallowed loans of $30,000; $10,000 and $17,500 which it charged represented taxable income. The Government contended that this disallowance was proper and that it could ask the jury to find that these sums represented taxable income on the basis of the following facts and inferences to be drawn therefrom.

■ One loan of $30,000 was stated by the defendant to have been received from a deceased jurist. No attempt was

made by the Government to demonstrate that the deceased jurist did not have resources from which such a loan could have been made, or that there did not exist a friendship between the defendant and the deceased jurist which might reasonably account for such a loan. The Government merely argued that since the jurist was deceased and could not substantiate or deny the allegation that circumstance created a suspicion that the loan was not made and from that fact alone the jury should be permitted to infer that the loan as a matter of fact was not made. The Government had the burden of proving that defendant's explanations were false in order to justify the inference that the alleged loans were in fact taxable income, United States v. Adonis, 3 Cir., 221 F.2d 717. The Government's proof has fallen far short of the standard required in criminal cases. It has failed to establish by competent legal proof that the loan actually was not made and the Court could not permit a jury to guess that it was not made simply on the circumstance that the alleged lender was deceased.

As to the loan of $10,000, the only evidence presented was that there was a discrepancy of that amount between the loans reflected on defendant's books and the amounts of loans, the sources of which he disclosed. On the other hand, there is nothing in the evidence to show that the defendant or his accountants had that fact specifically brought to their attention or were ever asked about it. At best, as to that item, the Government has established a lack of explanation rather than a false explanation. At worst, it has established a failure on its part to follow out a possible lead as to source of nontaxable income.

■ As to the loan of $17,500 stated by defendant's accountants to have been made from one Herbert Perry in 1946, the Government's proof consisted of this: in an action in the Court of Common Pleas of Philadelphia County filed by Herbert Perry against defendant to recover the sum of $17,500 alleged to have been loaned to defendant in 1947 (not 1946), the defendant filed a sworn answer alleging that he had not borrowed $17,500 from Herbert Perry in 1947 or at any other time. That evidence established inconsistent statements of the defendant and his accountants and creates grave suspicion, but it does not prove the vital fact for which it was offered, i. e., that in 1946 Herbert Perry did not loan John J. O'Malley $17,500. It would appear that one of the statements was false, but which one? The jury should not have been permitted to speculate. Perry might have been produced to shed light on the situation, but he was not. There was no evidence that he had ever been interviewed by Government agents, no showing that he was unavailable as a witness, nor was any explanation given as to his absence at the trial. Under the circumstances, defendant's answer in the civil action instituted by Perry should not have been admitted for the purpose of proving that the loan was not made.

■ One of the items relied upon by the Government to establish an important element of the alleged deficiency appeared in the books of the Carson Packing Company wherein the capital account of O'Malley in that company, a partnership, increased substantially during the year 1946, when one of the partners withdrew. There was no attempt by any evidence whatsoever on the part of the Government to prove that O'Malley paid one single penny for his increased interest in the company. The Government, however, contends from the book entries alone that it is entitled to consider the increase there reflected as part of taxes willfully evaded. As to this item I feel that the Government has misconceived the burden placed upon it. In a criminal prosecution the burden of establishing a willful tax evasion remains with the Government throughout the case and never shifts to the defendant, Holland v. United States, 348 U.S. 121, at pages 138, 139, 75 S.Ct. 127. I do not feel that this evidence, standing alone, is sufficient to permit the Court to allow the jury to find beyond a reasonable doubt

that as to this item defendant was guilty under the standards of proof governing criminal prosecutions. Adjustments made on accounting records of a company have often been the subject of civil litigation between the Commissioner of Internal Revenue and taxpayers, creating questions of tax liability which challenge the ingenuity of accountants and attorneys skilled in tax techniques. It would be extremely unfair to a defendant to permit him to be found guilty based solely on a capital accounting adjustment made on the books of a company. Particularly is this true where the Government offers no evidence to prove that that adjustment was made as the result of an actual expenditure of funds by the defendant in the prosecution year, or that the adjustment was made with specific intent to defraud.

Since the trial of this case the Court has had the benefit of the views of the Supreme Court of the United States on the net worth theory of prosecutions in income tax evasion cases. Certain rules governing net worth prosecutions have been laid down in the opinions of Mr. Justice Clark in four cases decided December 6, 1954, to wit: Holland v. United States, supra; Friedberg v. United States, 348 U.S. 142, 75 S.Ct. 138; Smith v. United States, 348 U.S. 147, 75 S.Ct. 194, and United States v. Calderon, 348 U.S. 160, 75 S.Ct. 186. The principles there enunciated together with the decision of Circuit Judge Hastie of the United States Court of Appeals for the Third Circuit in the case of United States v. Harold John Adonis, cited above, are dispositive of this motion.

In the Holland case, Mr. Justice Clark held that in net worth prosecutions the Government has the burden of showing a likely source of unreported taxable income but only with reasonable certainty. His language in that regard is very specific and states [348 U.S. 121, 75 S.Ct. 136]:

"Increases in net worth, standing alone, cannot be assumed to be attributable to currently taxable income. But proof of a likely source, from which the jury could reasonably find that the net worth increases sprang, is sufficient. * * * "

As to likely source of income, the Holland case posed no difficulty. The defendant there operated a hotel and bar during the prosecution year. The Government alleged that only part of the income was registered in the books and it was shown that the hotel had produced, before the defendant became owner, profits substantially in excess of those reported. There was also evidence in that case, to disprove claimed accumulations of cash by the defendant over a period of twenty years, that the defendant had been pressed by creditors in 1928 and 1929, lost his restaurant on a foreclosure in 1933, that his wholly owned corporation became insolvent, leaving over $35,000 in debts, that the defendant had left his family and worked for six years as a Chef in another city at $175.00 a month, during which time his wife had been forced to work to help support the family. These factors establish beyond peradventure of doubt the hotel as the likely source. The evidence in the instant case is directly contrary. The Government admits in this case that it has no evidence whatsoever to show that defendant John J. O'Malley had a likely source of income other than from the sources reported in his income tax return filed for the prosecution year. The Government further conceded that the information in the tax return as to amounts reported from these revealed sources had been verified by the Government's own investigation and that there was no inaccuracy in the amounts reported.

In the Adonis case, supra, the Government did not prove a likely source of taxable income, but it was held that deliberate falsification as to alleged nontaxable sources of receipts to explain large expenditures or accumulations was a legally acceptable circumstantial showing that the funds were derived from current income. In that case the Government proved that Adonis during the prosecution year increased his assets some $45,000 over and above his income and previ-

ous net worth. There was no explanation of the apparent increase in net worth in that year. When the investigation of income tax liability started Adonis elected not to talk with the investigators who sought to interrogate him but the investigation did disclose that in his own circle of friends and acquaintances he had made a detailed and complete explanation of his ability to acquire these assets in an amount which was completely out of line with his apparent circumstances which were extremely modest. After proving the explanations of the defendant as made to friends and acquaintances who testified at the time of trial, the Government by clear and convincing evidence established the complete falsity of the defendant's explanation of alleged sources of the money necessary to acquire the assets. For example, it proved that Adonis's mother from whom he was supposed to have received a substantial amount of money was in fact indigent and the object of charity of her family; that an amount of money ostensibly a loan evidenced by a mortgage had in fact never been made; and finally, a statement that he had received a very substantial sum of money from a woman acquaintance, a clerk earning only a small salary and of modest circumstances, was entirely without foundation. Circuit Judge Hastie in the Adonis opinion held that the defendant's itemizing of supposed sources of nontaxable receipts was a calculated misrepresentation designed to conceal current income.

The facts of the instant case do not bring it within the ruling in the Adonis case. Defendant here, either directly or through his accountants, furnished the investigators with essential information to substantiate his claim of receipt of funds from nontaxable sources. I have discussed previously the facts involved as shown by the evidence in the case. In the Adonis case the Government directly proved calculated misrepresentation of source. In the instant case the nearest approach to the facts of the Adonis case rests in the evidence relating to the Perry loan. In that matter (the Perry loan) the Government has proved inconsistent statements but it has not proved which statement is false. In the Adonis case direct proof of falsity was offered. To permit a jury in this case on the evidence presented to find as a fact that the loan actually was not made would be an unwarranted and undesirable extension of the principle enunciated by Circuit Judge Hastie. A ruling in favor of the Government's contention would result in a lowering of the standards of proof required and the weakening of the safeguards prescribed by the Supreme Court in the Holland decision and by the Court of Appeals of this Circuit in the Adonis case.

The defendant may well have over a period of years substantially increased his net worth and on a basis which may have involved understatement of taxable income. However, in a criminal prosecution for income tax evasion in a particular calendar year, the Government is not permitted to allocate summarily such unaccounted-for accretions to a particular year without meeting the requirements laid down in the Holland and the Adonis decisions. The Government has, in the opinion of the Court, failed to meet such requirements in the instant prosecution. My conclusion, therefore, is that the proof adduced is insufficient to permit a jury to find beyond a reasonable doubt that defendant John J. O'Malley for the year 1946 willfully evaded income taxes due the United States.

An order for judgment of acquittal will be entered in accordance with the foregoing opinion.