T.C. Memo. 2005-247


UNITED STATES TAX COURT


ESTATE OF MARIE A. MANIGLIA, DECEASED, JOSEPH S. MANIGLIA,
EXECUTOR, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 20141-03.                    Filed October 26, 2005.


<u>Paul J. Dee, Jr.</u>, and <u>Jueun Chung</u>, for petitioner.

<u>Michael R. Fiore</u>, for respondent.


MEMORANDUM OPINION


WELLS, <u>Judge</u>:  Respondent determined a $764,472 deficiency
in the estate tax of the Estate of Marie A. Maniglia (the
decedent).  The issue we must decide is whether the entire value
of certain real property or only 50 percent of the value of that
property is properly includable in the decedent's gross estate.
All section references are to the Internal Revenue Code, as

amended, and all Rule references are to the Tax Court Rules of Practice and Procedure.

## Background

Some of the facts and certain exhibits have been stipulated. The parties' stipulations of fact are incorporated in this opinion by reference and are found as facts in the instant case. At the time of filing the petition in the instant case, Joseph S. Maniglia[1] resided in Wareham, Massachusetts. The decedent died on July 11, 1999. At the time of her death, the decedent resided in Somerville, Massachusetts. The decedent was a widow whose husband, Angelo Maniglia, died in 1971. The decedent had two sons, Frank A. Maniglia and Joseph S. Maniglia. Frank A. Maniglia was involved in a small plane crash in 1985, and his body was never recovered. The decedent was survived only by Joseph S. Maniglia, who is the executor of her estate.

The real estate at 7 Commonwealth Avenue, Boston, Massachusetts, was a multi-unit, residential, rental apartment building (the property). On May 25, 1977, Henry Fluster conveyed the property to the decedent and Frank A. Maniglia as joint tenants for $200,000. The deed was properly recorded in the Suffolk County, Massachusetts, Registry of Deeds (the registry).

---

[1] The caption on the petition incorrectly stated the executor's name to be "Joseph A. Maniglia". The caption has been amended, by order, to correctly state the executor's name as "Joseph S. Maniglia".

The property was paid for as follows: (1) A loan of $100,000 from the Winter Hill Federal Savings & Loan Association to the decedent, secured by a mortgage on the property which was recorded in the registry on March 25, 1977; (2) a loan of $75,000 from Henry Fluster to the decedent, secured by a mortgage on the property which was recorded in the registry on March 25, 1977;[2] and (3) $25,000 in cash.

On June 10, 1977, Frank A. Maniglia conveyed his undivided one-half interest in the property to the decedent for a nominal consideration. The conveyance was recorded in the registry. On August 1, 1977, the decedent executed an indenture of trust creating the "Fam-Trust" (Fam-Trust)[3] as a nominee trust[4] under

---

[2] We note that the mortgages were recorded in March, 2 months before the conveyance of the property from Henry Fluster to the decedent and Frank A. Manigilia. However, these facts were stipulated by the parties, and the record does not contain any documents indicating another recording date.

[3] We note that the documents are not consistent in the spelling of "Fam-Trust". The above-mentioned indenture of trust referred to the "Fam-Trust". Other documents vary slightly. For example, the trust has been referred to as the "Fam Trust" or "FAM Trust". Unless referring to a specific spelling on a document, we will use "Fam-Trust".

[4] A nominee trust is an entity created for the purpose of holding legal title to property. See, e.g., Johnston v. Holiday Inns, Inc., 595 F.2d 890, 893 (1st Cir. 1979) ("A nominee trust is an entity created for holding legal title to property with the trustees having only perfunctory duties; upon termination of the trust, the beneficiaries accede to title as 'tenants in common in proportion to their beneficial interests.'"(quoting Birnham & Monahan, "The Nominee Trust in Massachusetts Real Estate Practice", 60 Mass L.Q. 364 (Winter 1976))).

Massachusetts law and naming the decedent as the settlor and sole beneficiary and Joseph S. Maniglia as trustee. The indenture of trust was recorded in the registry on August 5, 1977, and has never been amended. Additionally, an unrecorded statement of beneficial interest designated the decedent as the sole beneficiary of the Fam-Trust.

Also on August 1, 1977, the decedent conveyed the property to "Frank S. Maniglia" as trustee of the Fam-Trust for a nominal consideration and recorded the deed in the registry. On September 14, 1977, the decedent recorded a confirmatory deed in the registry which stated that, because of a typographical error, the previously recorded deed had mistakenly referred to Frank S. Maniglia as trustee when, in fact, Joseph S. Maniglia was the trustee.

Joseph S. Maniglia managed the property, except for a period in the early 1980s when he was unable to perform his management responsibilities. The bank account into which rents were deposited and from which expenses were paid was at all times in the name of "Fam-Trust".

On June 8, 1978, Joseph S. Maniglia signed a building permit with the City of Boston which named "FAM Trust" as the owner of the property. All documentation relating to the building permit indicated that "FAM Trust", or Joseph S. Maniglia, trustee of the Fam-Trust, was the owner of the property.

On December 23, 1985, the decedent refinanced the property with a $350,000 loan from the Winter Hill Federal Savings & Loan Association. The mortgage on the property securing the loan was recorded in the registry. Immediately before recording the mortgage, Joseph S. Maniglia, as trustee of the Fam-Trust, conveyed the property to the decedent. Immediately after recording the mortgage, the decedent reconveyed the property to Joseph S. Maniglia as trustee of the Fam-Trust. Both conveyances were recorded in the registry.

Mortgage interest on the refinanced loan was reported to the decedent. The City of Boston issued real estate tax bills for the property to "MANIGLIA JOSEPH S TRST OF FAM TR." The property was insured in the name of "FAM Trust, Joe Maniglia Tr."

From 1978 through 1999, Federal partnership returns were filed in the name of "Family Trust". From 1996 through 1999, Massachusetts State partnership returns were filed in the name of "Family Trust". For taxable years 1996 through 1999, the partnership filed Schedules K-1, Partner's Share of Income, Deductions, Credits, etc., indicating that the decedent and Joseph S. Maniglia each owned a 50-percent interest in the partnership and reporting 50 percent of the partnership's income to each partner. For taxable years 1996 through 1999, the decedent and Joseph S. Maniglia each reported the income reported on the Schedules K-1 on their individual Federal income tax

returns.  No written partnership agreement exists, and no formal records of the partners' capital accounts or formal financial statements exist.

A Form 706, United States Estate (and Generation-Skipping Transfer) Tax Return, was filed for the decedent's estate on October 13, 2000.  Schedule F, Other Miscellaneous Property Not Reportable Under Any Other Schedule, of the estate tax return indicated that the decedent owned only a 50-percent interest in the "Fam Trust", a partnership owned equally by the decedent and Joseph S. Maniglia, and reported only 50 percent of the property's date of death value (as determined by the estate).[5]

## Discussion

Respondent contends that the property was owned by the Fam-Trust, of which the decedent was the sole beneficiary, and therefore the entire value of the property is includable in the decedent's gross estate.  The estate argues that the property was owned by a partnership, and therefore only 50 percent of the value of the property is includable in the decedent's gross estate.

---

[5] Schedule F of the decedent's estate tax return states: "The decedent owns a 50% interest in the FAM Trust, a partnership, EIN 04-2651063.  The only asset held by the partnership is real estate located at 7 Commonwealth Ave., Boston, MA.  The date of death value of the real estate is $1,184,790."  Only 50 percent ($592,395) of the value of the property was reported as includable in the decedent's gross estate on Schedule F.  The parties have stipulated that the date of death value is $2,400,000.

Section 2033 provides: "The value of the gross estate shall include the value of all property to the extent of the interest therein of the decedent at the time of his death." See also sec. 20.2033-1(a), Estate Tax Regs. ("The gross estate of a decedent * * * includes under section 2033 the value of all property, whether real or personal, * * * beneficially owned by the decedent at the time of his death."). As a general rule, the Commissioner's determinations in the notice of deficiency are presumed correct, and the burden of proving an error is on the taxpayer. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).[6]

The estate argues that substance should prevail over form; contending that bare legal title does not establish ownership and that the Court must examine the intent of the parties as well as their conduct to decide that a partnership owned the property. In some circumstances, a taxpayer may rely on substance over form. Helvering v. F.& R. Lazarus & Co., 308 U.S. 252 (1939). The taxpayer, however, "must provide objective evidence that the substance of the transaction was in accord with the position argued by * * * [the taxpayer] rather than the form set forth by all the relevant documents." Groetzinger v. Commissioner, 87 T.C. 533, 541 (1986) (emphasis added). The Court will not

---

[6] The estate does not argue that the burden of proof should be on respondent pursuant to sec. 7491(a).

restructure the transaction with the benefit of hindsight in applying the substance over form doctrine.  Id. at 542; see also Commissioner v. Natl. Alfalfa Dehydrating & Milling Co., 417 U.S. 134, 149 (1974) ("while a taxpayer is free to organize his affairs as he chooses, nevertheless, once having done so, he must accept the tax consequences of his choice, whether contemplated or not, * * * and may not enjoy the benefit of some other route he might have chosen to follow but did not"); Estate of Rosenblatt v. Commissioner, T.C. Memo. 1977-12 ("We cannot treat lightly the formal manner in which properties are held, lest we subject legal titles to unnecessary uncertainties and complicate the administration of law.").

The estate has not produced sufficient credible evidence to show that the ownership of the property is different from the form set forth in all the relevant documents and, therefore, has not proved that the substance of the transaction was different from its form.  The evidence offered on the estate's behalf is Joseph S. Maniglia's testimony and that of his spouse and his accountant.  At trial, Joseph S. Maniglia stated that "Every real estate broker on Charles Street in Boston knew I was one of the owners of that building."  We agree that, as the trustee of the Fam-Trust, Joseph S. Maniglia would be the legal holder of title to the property.  However, the estate does not appear to appreciate the fact that as trustee, Joseph S. Maniglia would

hold title to the property for its beneficial owner under the Fam-Trust; i.e., the decedent.

At trial, the estate offered Joseph S. Maniglia's accountant, Mr. Pino, as a witness. Mr. Pino's testimony was of little help because of his poor memory. He could not remember: The year he became licensed as a Certified Public Accountant, the year he met the Maniglias and began preparing their returns, or whether he ever knew that Joseph S. Maniglia was or was not a coowner of the property.[7] Additionally, Mr. Pino's admission that his license was suspended "back then" because of a tax evasion conviction brings his credibility into question.

Neither the filing of partnership returns in the name of "Family Trust" for taxable years 1978 through 1999 nor the fact that Joseph S. Maniglia performed managerial tasks with respect to the property is sufficient proof that a partnership owned an interest in the property. There is no written partnership agreement. There are no balance sheets showing the partnership assets or formal financial statements indicating the property was owned by a partnership. To the contrary, the trust document,

---

[7] Mr. Pino stated on direct examination that he never received any documents from the Maniglias indicating there was no partnership. He also, however, never received any documents showing that Joseph S. Maniglia jointly owned the property or that a partnership owned the property. The only information Mr. Pino ever received in the process of preparing the Maniglias' tax returns related to income and expenses.

deeds, and other documents admitted into evidence[8] indicate that the Fam-Trust owned the property, that the decedent was the sole beneficiary of the Fam-Trust, and that Joseph S. Maniglia was the trustee of the Fam-Trust.

The estate contends that Joseph S. Maniglia obtained a 50 percent pro rata share of the proceeds when the property was refinanced and that he contributed the $25,000 in cash towards the purchase of the property.[9]  However, the estate has failed to offer any documentary evidence corroborating its contentions. The only evidence the estate offered to counter the documentary evidence showing the decedent was the sole beneficial owner of the property was the self-serving testimony of Joseph S. Maniglia and the vague testimony of his wife.[10]  Joseph S. Maniglia

---

[8] We note that the record contains partnership returns that were filed in the name of "Family Trust".  Schedule L, Balance Sheets, of the Form 1065, U.S. Partnership Return of Income, did not list the property as a partnership asset.  In fact, no partnership assets were listed on any of the Schedules L admitted into evidence.  The partnership claimed on Schedule B that it was not required to complete Schedule L because:  The partnership's total receipts for that year were less than $250,000; the partnership's total assets at the end of the year were less than $600,000; and Schedules K-1 were filed with the return and furnished to the partners on or before the due date for the partnership return.

[9] At trial, Joseph S. Maniglia conceded that there is no documentation proving that he contributed $25,000 in cash.

[10] Joseph S. Maniglia's wife, Linda Maniglia, testified that, after graduating from college, she and Joseph S. Maniglia both worked as teachers, lived in an inexpensive apartment, and maintained a modest lifestyle in order to save money.  Mrs.

(continued...)

testified that he was the "record" owner of the property on the date of purchase but did not realize until "1990-whatever" that his name was not on the title to the property. Joseph S. Maniglia, however, signed the trust document stating that he would "hold any and all property that may be transferred to him as trustee hereunder for the sole benefit of the following person, who is the sole Beneficiary hereof: Marie A. Maniglia."[11] Moreover, in connection with the 1985 refinancing, Joseph S. Maniglia, as trustee, conveyed the property to the decedent, and she reconveyed the property to Joseph S. Maniglia as trustee.

---

[10](...continued)
Maniglia testified that, in addition to their joint checking account, Joseph S. Maniglia also maintained a separate account where he deposited his earnings from "coaching and different things." Mrs. Maniglia, testified that it was her understanding that Joseph S. Maniglia and her mother-in-law, the decedent, purchased the property with Joseph S. Maniglia providing the $25,000 downpayment from his separate account. Mrs. Maniglia also testified, however, that she had no knowledge of how much money was in Joseph S. Maniglia's separate account and that she never read any of his bank statements. Mrs. Maniglia further testified that Joseph S. Maniglia and the decedent equally split the proceeds from the 1985 refinancing, but that she was not sure where Joseph S. Maniglia placed the proceeds from the transaction. She personally did not have access to the funds, but stated that if she wanted money, she "just got it from Joe [Joseph S. Maniglia]."

[11] At trial, respondent offered evidence of two mortgages secured by other properties in Joseph S. Maniglia's name dated Feb. 27, 1977, in the amount of $22,000, and Jan. 25, 1980, in the amount of $90,000. Joseph S. Maniglia's name was on the mortgage documents relating to both other properties, but not on the mortgage on the property. These mortgages on other properties tend to show that Joseph S. Maniglia should have understood the import of the documents he signed regarding the property.

We are "not compelled to believe evidence which to it seems improbable, or to accept as true uncorroborated evidence of interested witnesses even though uncontradicted." Marcella v. Commissioner, 222 F.2d 878, 883 (8th Cir. 1955), affg. a Memorandum Opinion of this Court. We hold that the property was not owned by a partnership between the decedent and Joseph S. Maniglia and that the Fam-Trust, Joseph S. Maniglia as trustee and the decedent as sole beneficiary, owned the property at the decedent's death. Accordingly, respondent properly included the entire value of the property in the decedent's gross estate.

To reflect the foregoing,

Decision will be entered for respondent.